## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DEBORAH BOYAJIAN,       )
        )
       Plaintiff,      )
        )
v.                  )    Docket No. 07-cv-214-P-S
        )
STARBUCKS CORPORATION d/b/a   )
STARBUCKS COFFFE COMPANY,    )
        )
        )
       Defendant.     )

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendant's Motion for Summary Judgment (Docket # 44) and Defendant's Motion to Preclude Testimony and Reports of Plaintiff's Expert Witness (Docket # 45). As explained herein, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment (Docket # 44). The Court RESERVES RULING on Defendant's Motion to Preclude Testimony and Reports of Plaintiff's Expert Witness (Docket # 45).

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).[1]  In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. See Santoni, 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).  "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculations." Benoit v.

---

[1] For purposes of summary judgment, the Court considers only evidence submitted by the parties in accordance with the Local Rules of this District.  See D. Me. Loc. R. 56.  The Court observes that neither Defendant's Statement of Undisputed Material Facts (Docket # 46) nor Plaintiff's Opposition to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Facts (Docket # 50) complies with those rules.  See id. at 56(b) (moving party must submit "separate, short, and concise statement of material facts, each set forth in a separately numbered paragraph(s) . . . [and] supported by a record citation"); id. at 56(c) (nonmoving party must submit "separate, short, and concise statement" in which it must "admit, deny or qualify the facts," supporting each denial or qualification with an appropriate record citation).  Failure to comply with Local Rule 56 has serious consequences, including the admission of facts not properly controverted.  See id. at 56(f); Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007).

Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (citation and internal punctuation omitted).

## II.    FACTUAL BACKGROUND

Between December 2005 and April 2006, Plaintiff Deborah Boyajian ("Boyajian") applied to work as a barista at three Starbucks locations on four separate occasions. These applications produced two interviews, but Defendant Starbucks Corporation ("Starbucks") did not hire her. Boyajian attributes this outcome to age discrimination, and filed this disparate treatment claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 et seq.

### A.    Application to Hay Building Location

Boyajian, then aged 53, applied to the Starbucks Hay Building location on November 15, 2005. (See Defendant's Statement of Undisputed Material Facts ("Def.'s SMF") (Docket # 46) ¶ 1; Plaintiff's Opposition to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Facts ("Pl.'s OSMF") (Docket # 50) ¶ 1.) Erika McIntire ("McIntire") was the Store Manager at the Hay Building location at that time, and initially reviewed Boyajian's application sometime between November 17 and 22. Upon her initial review, McIntire discounted Boyajian's application, ostensibly because of Boyajian's request for a relatively high starting wage. McIntire took no further action until Boyajian called her to check on the status of her application. At this point, McIntire and Boyajian scheduled an interview for December 5.

During the interview, McIntire used the Starbucks Behavioral Interview Deck and recorded notes on the Starbucks Behavioral Rating Form, although Boyajian asserts that

McIntire did not consistently follow the Interview Deck instructions.  At the conclusion of the interview, McIntire rated Boyajian "recommend with some reservations," but had concerns about Boyajian's availability and disrespectful body language.  (Id. ¶ 8.) Boyajian claims that she told McIntire during the interview that she was more available than her application indicated; however, she does not deny McIntire's characterization of her body language.  Despite her concerns, McIntire told Boyajian that she would contact Boyajian's references before any decision was made, and asked Boyajian to follow up in two weeks.

Sometime during the two-week period following the interview, Boyajian called the store to check on the status of her application.  She spoke to a store employee and asked when McIntire would be in.  The employee informed Boyajian that s/he could not provide that information.

Approximately two weeks after the interview, Boyajian and McIntire spoke when Boyajian called the store again to follow up about her application.  McIntire informed Boyajian that she had not yet contacted Boyajian's references.  McIntire perceived Boyajian as "aggressive" and disrespectful during this conversation; Boyajian characterized the call as "very friendly."  (Id. ¶ 9.)

During this period, McIntire was also informed by her store employees that Boyajian had visited the store and behaved disrespectfully toward them.  Boyajian denies that these visits occurred and suggests that McIntire's testimony on this score lacks credibility.

In early-to-mid January 2006, McIntire informed Boyajian that she would not be hired.   McIntire had concluded that she would not hire Boyajian because of her

employees' account of Boyajian's post-interview behavior, as well as her concerns about the interview itself.  However, McIntire told Boyajian that the decision not to hire her was solely due to Boyajian's limited availability.

At some point after this conversation,[2] McIntire recommended that Boyajian submit applications to a job fair being held at the Starbucks Northgate location.  She also suggested that Boyajian apply to other Starbucks stores.

In April 2006, Boyajian spoke with McIntire after seeing a sign outside the Hay Building advertising job openings.  Boyajian expressed interest in the job and asked whether her application was still on file.  McIntire said that she believed she still had the application, but had not hired Boyajian because of Boyajian's availability.  Boyajian told McIntire that she was flexible.  McIntire responded that she would consider the application and call Boyajian.  She never called; according to McIntire, her concerns about Boyajian's personality lingered.

### B.    Job Fair/Application to Exchange Street Location

In early April 2006, Starbucks held a job fair at its Northgate store in Portland, Maine.  Applicants who arrived at the job fair completed and submitted applications.  Store employees then reviewed these applications, assigned each applicant a number, and contacted applicants for interviews.

Boyajian attended the job fair and completed an application, dated April 5, 2006.  On the application, Boyajian inadvertently circled "yes" in response to a question asking whether she was younger than 18 years old.  Boyajian did not otherwise indicate her correct age or birth date on the application.  However, she did write "20+ years in cafes,

---

[2] The record is unclear as to when McIntire recommended that Boyajian apply to the Northgate job fair. (See Plaintiff's OSMF ¶ 11; McIntire Depo. (Docket # 50-5) at 134:11-16, 172:14-173:10.)

coffee shops, catering, bakeries, + retail + restaurants" and indicated that she had attended college on the first page of the application. Boyajian submitted the application to an employee working at the fair and was later called for an interview.

Boyajian interviewed with Brunswick Store Manager John LaBonte ("LaBonte"). This interview was similar in format to Boyajian's interview with McIntire. LaBonte used the Starbucks Behavioral Interview Deck throughout the interview, and ultimately gave Boyajian an overall rating between 4 and 5 (out of 5). At the conclusion of the interview, LaBonte told Boyajian that another Store Manager would contact her.

LaBonte then contacted Nancy Boutté (née Brock) ("Boutté"), Store Manager at the Exchange Street location, and told her that he had identified an applicant she might wish to consider. LaBonte noted that the applicant had interviewed very well. Boutté asked LaBonte to leave a copy of the application on her desk at the Exchange Street store.

Boutté does not specifically recall Boyajian's application or her age at the time of application. Her practice as Store Manager was to disregard any application on which the applicant answered "yes" to the question asking whether s/he was younger than 18 years old. Thus, Boutté would not have contacted Boyajian for an interview. Boyajian never interviewed with or otherwise met Boutté.

### C.     Application to Maine Crossing Location

Boyajian submitted a job application to the Maine Crossing location shortly after the job fair. Boyajian did not provide her age or birth date. However, she did write "20+ years cafes, retail bakeries, hostessing + food + wine services" on the first page of the

application.  Boyajian submitted her application to an employee at the Maine Crossing location and was told that the manager would call her if interested.

Steve Belew was the Store Manager at the Maine Crossing location during this period.  His practice was to accept all applications submitted at his store and review each one individually.  Applications left with a store employee would be placed in Belew's inbox for his review.  Due to the demands on his time, Belew relied on certain filters in his application review, including employment eligibility, work history (including gaps therein), references, and availability.  If he had sufficient concerns about an application based on one or more of these filters, his practice was not to contact that applicant for an interview.

Belew does not specifically recall reviewing Boyajian's application.  However, Belew identified a five-year gap in Boyajian's work history as a potential basis for filtering out her application.  He also identified the absence of a date span for Boyajian's most recent employment.  Boyajian never interviewed with or otherwise met Belew.

On July 3, 2006, Boyajian filed a Charge of Discrimination with the Maine Human Rights Commission and Equal Employment Opportunity Commission, which issued right-to-sue letters approximately four months later.

## III.    DISCUSSION

Pursuant to the ADEA, an employer may not "fail or refuse to hire" an individual "because of such individual's age."  29 U.S.C. § 623; see also 5 M.R.S.A. § 4572(1)(A).[3]  In the absence of direct evidence of age discrimination, the Court's analysis proceeds

---

[3] Maine courts apply the MHRA in accordance with federal anti-discrimination law, including the ADEA.  See Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 228 n.1 (1st Cir. 2007); Thorndike v. Kmart Corp., 35 F. Supp. 2d 30, 32 (D. Me. 1999).  Thus, the Court's analysis pertains to both the federal and state claims, unless otherwise noted.

under the familiar <u>McDonnell Douglas</u> burden-shifting framework.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973).  Under this framework, Boyajian must first establish a prima facie case of discrimination.[4]  This burden is "quite easy to meet," and the Court joins both parties in assuming *arguendo* that Boyajian has satisfied it.  <u>Villanueva v. Wellesley Coll.</u>, 930 F.2d 124, 127 (1st Cir. 1991).  (<u>See</u> Def.'s Mot. for Summ. J. (Docket # 44) at 3; Pl.'s Opp. to Def.'s Mot. for Summ. J. (Docket # 49) at 2.)

A successful prima facie showing creates an inference of discrimination and shifts the burden to Defendant Starbucks "to articulate a legitimate, nondiscriminatory reason" for failing to hire Boyajian.  <u>Gu v. Boston Police Dep't</u>, 312 F.3d 6, 12 (1st Cir. 2002).  "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 823 (1st Cir. 1991).  Starbucks has proffered numerous legitimate nondiscriminatory reasons for its failure to hire Boyajian, including Boyajian's conduct during and after her interview with McIntire, Boyajian's inadvertent error on her Exchange Street application, and the five-year gap in Boyajian's work history.  (<u>See</u> Def.'s Mot. for Summ. J.  (Docket # 44) at 3, 6-7.)

At the final stage, the inference of discrimination vanishes, and Boyajian must demonstrate that Starbucks' proffered justification is pretextual and that its failure to hire her "was instead motivated by discriminatory animus."  <u>Rivera Rodriguez v. Sears</u>

---

[4] A plaintiff in a discriminatory failure-to-hire case establishes a prima facie case by demonstrating that: (1) she is a member of a protected class, (2) she applied and was qualified for the position in question, (3) that despite her qualifications, she was rejected, and (4) that, after her rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications.  See <u>Rivera Rodriguez v. Sears Roebuck de Puerto Rico, Inc.</u>, 367 F. Supp. 2d 216, 223 (D. P.R. 2005); <u>see also</u> <u>Gadson v. Concord Hosp.</u>, 966 F.2d 32, 34 (1st Cir. 1992); <u>Melendez v. SAP Andina y del Caribe, C.A.</u>, 518 F. Supp. 2d 344, 359 (D. P.R. 2007).  The ADEA limits the protected class to those who are at least 40 years old; the MRSA does not.  See <u>Ricci v. Applebee's Ne., Inc.</u>, 297 F. Supp. 2d 311, 314 (D. Me. 2003).

Roebuck de Puerto Rico, Inc., 367 F. Supp. 2d 216, 223 (D. P.R. 2005); see also Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998).  In some cases, "the plaintiff's prima facie case together with sufficient evidence of pretext [may] support an inference of discrimination."  Currier v. United Techs. Corp., 393 F.3d 246, 255 (1st Cir. 2004); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).  In other words, "a plaintiff may survive summary judgment not by unearthing positive evidence of a discriminatory motive, but by showing that an employer's proffered justification for its adverse employment action was such that a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-Puerto Rico, 404 F.3d 42, 44 (1st Cir. 2005) (citation and internal punctuation omitted).

Pretext may be established by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (citation and internal punctuation omitted).  However, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [s]he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."  Mesnick, 950 F.2d at 824 (citation and internal punctuation omitted).

In assessing pretext, the Court considers "the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible."  Id. (citation and internal punctuation omitted); see also Kouvchinov v. Parametric Tech. Corp., 537 F.3d

62, 67 (1st Cir. 2008). The applicant's "personal opinion regarding [her] own job qualifications is not sufficiently probative on the issue of pretext." Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 385 n.3 (1st Cir. 2000) (citation and internal punctuation omitted).

Finally, the Court's role is not "to second-guess the business decisions of an employer, nor to impose [its] subjective judgments of which person would best fulfill the responsibilities of a certain job." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st Cir. 1990). "Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825. With this guidance in mind, the Court considers Boyajian's specific allegations.

### A.      Application to Hay Building Location

In support of its decision not to hire Boyajian at the Hay Building location, Starbucks offers Boyajian's conduct during and after her interview with Store Manager McIntire as a legitimate nondiscriminatory justification. In response, Boyajian adduces the following evidence of pretext: (1) McIntire lied to Plaintiff about the reason she did not hire her; (2) McIntire failed to contact Boyajian's references; (3) McIntire referred Plaintiff to other Starbucks locations and to the April 2006 job fair; (4) McIntire failed to comply with Starbucks' hiring protocol; (5) a spreadsheet that reveals disparate hiring at the Hay Building location from April 16, 2005 to September 30, 2006; and (6) statistical evidence of Starbucks' discriminatory hiring practices in Maine (the "Collom testimony"). The Court considers this evidence in turn.

### i.    McIntire's inconsistent explanations

By early-to-mid January 2006, McIntire had concluded that she would not hire Boyajian, ostensibly because of her employees' account of Boyajian's post-interview behavior, as well as her concerns about the interview itself.  Indeed, McIntire now asserts that Boyajian's conduct during and after the interview was "bullying" and "aggressive."  However, McIntire told Boyajian that the decision not to hire her was solely due to Boyajian's limited availability.

Inconsistent explanations for failing to hire an applicant may constitute evidence of pretext.  See Billings v. Town of Grafton, 515 F.3d 39, 56 (1st Cir. 2008).  Explanations "can be inconsistent in the sense that the employer presents conflicting explanations or inconsistent in that an explanation does not make sense in light of the circumstances."  Antonucci v. Life Care Ctrs. of Am., Inc., No. 06-108ML, 2008 U.S. Dist. LEXIS 10768, at *19 (D. R.I. Feb. 13, 2008).  In addition to the simple inconsistency between McIntire's various explanations, Boyajian allegedly informed McIntire that her availability was broader than indicated on the application.  Thus, McIntire's explanations are inconsistent in both senses.

Of course, a jury, at trial, could accept McIntire's explanation that she simply desired to spare Boyajian's feelings.  However, at the summary judgment stage, viewing the evidence in the light most favorable to the nonmoving party and refusing to engage in credibility assessments, McIntire's shifting explanations furnish evidence of pretext.  See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000); Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 26 (1st Cir. 1998).

### ii.    McIntire's failure to contact references

During their interview, McIntire told Boyajian that she would contact Boyajian's listed references before any decision was made.  McIntire did not do so.[5]  Boyajian offers this failure to as evidence of pretext.

When viewed in the light most favorable to the nonmoving party, McIntire's failure to contact Boyajian's references suggests that McIntire decided not to hire Boyajian during the interview.  A reasonable factfinder could find that this fact renders McIntire's ostensible reliance on her employees' account of Boyajian's post-interview behavior less credible.  Thus, McIntire's failure to contact Boyajian's references supports an inference of pretext.

### iii.    McIntire's referral

Sometime after deciding not to hire Boyajian, McIntire recommended that Boyajian submit applications to the Northgate job fair and to other Starbucks locations.  McIntire's decision to refer Boyajian to other Starbucks locations is not, as Boyajian suggests, equivalent to an employer's decision to rehire a discharged employee.  See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 42 (1st Cir. 2001).  However, pretext may be established by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons."  Santiago-Ramos, 217 F.3d at 56 (citation and internal punctuation omitted).  A reasonable factfinder could find that McIntire's willingness to refer Boyajian undercuts her characterization of Boyajian as aggressive and disrespectful, and therefore supports an inference of pretext.

---

[5] In fact, the summary judgment record is unclear as to whether McIntire even attempted to contact Boyajian's references.  (See Pl.'s OSMF ¶ 26; Defendant's Reply Statement of Facts ("Def.'s Reply SMF") (Docket # 55) ¶ 26; McIntire Depo. (Docket # 50-5) at 130:14-131:5.)

### iv.    McIntire's failure to comply with hiring protocol

Deviation from established policy or practice may constitute evidence of pretext. See Kouvchinov, 537 F.3d at 68.  Boyajian cites numerous examples of McIntire's failure to comply with Starbucks' hiring protocol, including her inconsistent use of the Starbucks Behavioral Interview Rating Form and consideration of subjective variables beyond those authorized by the Behavioral Interview Rating Guide.   Boyajian also alleges that McIntire completely failed to use the Behavioral Interview Rating Form when interviewing the younger candidate whom she ultimately hired.   In short, although Boyajian has not adduced evidence that McIntire deliberately manipulated the interview process to disadvantage her, a reasonable factfinder could find that McIntire's haphazard compliance with Starbucks' hiring protocol facilitated impermissible decision-making and therefore constitutes evidence of pretext.  See Brennan, 150 F.3d at 29.

### v.    McIntire hiring data

Boyajian identifies a spreadsheet produced by Starbucks in discovery, which shows that during the period of McIntire's management of the Hay Building location, she hired 19 baristas, none of whom were older than 30 at the time of hiring.  Starbucks fails to respond to this evidence, except to assert broadly that Boyajian proffers "no evidence of discriminatory intent."  (Def.'s Reply to Pl.'s Opp. to Mot. for Summ. J. (Docket # 54) at 5.)

McIntire's failure to hire any baristas older than 30 is certainly subject to various explanations, any of which Starbucks may offer at trial.  But a reasonable factfinder could find this evidence directly relevant to Boyajian's burden of demonstrating pretext. Indeed, Starbucks does not contend otherwise.

13

### vi.   The Collom testimony

Finally, Boyajian offers the expert testimony of Dr. Edward Collom.[6]   Collom attempted to identify all persons older than 35 who applied to the Hay Building, Exchange Street, and Maine Crossing locations.   Because the form application does not request the applicant's age, Collom inferred that datum from other indicators, including (1) whether the applicant mistakenly provided a date of birth, (2) prior employment history, and (3) reference information.

Regarding the Hay Building location, Collom observed that between September and December 2005, three of 18 applicants were older than 35.[7]   None were hired.[8] Collom concluded that the "application analysis provides significant evidence that people aged 35 and older comprise a larger proportion of the applicant pool than those who are eventually hired."  (Collom Report (Docket # 45-2) at 12-13.)

In evaluating failure-to-hire disparate treatment claims, "the full panoply of circumstantial evidence is available, including but not limited to statistical evidence showing disparate treatment by the employer of members of the protected class."

---

[6] In response, Starbucks filed a _Daubert_ motion to exclude Collom's testimony as unsound and prejudicial. (_See_ Def.'s Mot. to Preclude Testimony and Reports of Pl.'s Expert Witness (Docket # 45).)  For purposes of summary judgment, the Court assumes, without deciding, that this testimony is admissible at trial. Ultimately, the admissibility of the Collom testimony does not affect the Court's decision to deny summary judgment as to Boyajian's Hay Building application.  Furthermore, even assuming that Collom's testimony is fully admissible, the Court grants summary judgment as to Boyajian's Exchange Street and Maine Crossing applications.

[7] Collom described the number of applicants he identified as older than 35 as "absolute minimums."  (_See_ Analysis of Potential Age Discrimination Deborah Boyajian v. Starbucks Corporation ("Collom Report") (Docket # 45-2) at 11.)

[8] At a hiring rate of 16.7% (three of 18 total applicants were hired during this period), the number of applicants older than 35 expected to be hired is 0.5 (16.7% multiplied by three such applicants).  Again, the actual number was 0.

Booker v. Mass. Dep't of Pub. Health, 527 F. Supp. 2d 216, 226 (D. Mass. 2007)

(citation and internal punctuation omitted); see also Mesnick, 950 F.2d at 824.  However,

> statistical evidence in a disparate treatment case, in and of itself, rarely
> suffices to rebut an employer's legitimate, nondiscriminatory rationale for
> its decision to dismiss an individual employee.  This is because a
> company's overall employment statistics will, in at least many cases, have
> little direct bearing on the specific intentions of the employer when
> dismissing a particular individual.  Without an indication of a connection
> between the statistics, the practices of the employer, and the employee's
> case, statistics alone are likely to be inadequate to show that the
> employer's decision to discharge the employee was impermissibly based
> on age.

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993) (citation and internal

punctuation omitted); see also Booker, 527 F. Supp. 2d at 227; Rummery v. Ill. Bell Tel.

Co., 250 F.3d 553, 559 (7th Cir. 2001); Gadson v. Concord Hosp., 966 F.2d 32, 35 (1st

Cir. 1992).  Of course, the "usefulness of statistical evidence depends on all of the

surrounding facts and circumstances."  Hawkins v. Mary Hitchcock Mem'l Hosp., No.

99-113-M, 2001 U.S. Dist. LEXIS 9171, at *16 (D. N.H. Jan. 30, 2001), aff'd, 22

Fed.Appx. 21 (1st Cir. 2001) (citation and internal punctuation omitted).

Here, the Collom testimony fails to "eliminate other explanations for the

disproportionate statistics, such as random chance (given the small discrepancies and

small sample size involved here) or the actual distribution of aptitudes or expertise

among [employees] of differing ages."  Rossiter v. IBM Corp., No. 04-10069-DPW, 2005

U.S. Dist. LEXIS 24543, at *33 (D. Mass. Oct. 19, 2005); see also Coleman v. Quaker

Oats Co., 232 F.3d 1271, 1283 (9th Cir. 2000); Smith v. Xerox Corp., 196 F.3d 358, 371

(2d Cir. 1999); Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997).

Collom did not consider whether older applicants declined job offers, or lacked

"legitimate job-related qualification[s]" possessed by younger applicants.  Sheehan, 104

F.3d at 942.  Moreover, the data set is very limited, and was harvested from different time periods at each store.  At best, the Collom testimony indicates a correlative relationship between age and hiring at the three locations during arbitrarily selected time periods of varying duration.

Nevertheless, the Court finds that the evidence of McIntire's inconsistent and haphazard conduct during and after Boyajian's interview, in conjunction with the McIntire hiring data, satisfies Boyajian's burden of demonstrating pretext and permits her to survive summary judgment.  Thus, the Court DENIES Defendant's Motion for Summary Judgment (Docket # 44) as to Boyajian's Hay Building application.

### B.    Application to Exchange Street Location

In support of its decision not to hire Boyajian at the Exchange Street location, Starbucks offers Boyajian's application error as a legitimate nondiscriminatory justification.  In response, Boyajian adduces the following evidence of pretext: (1) Store Manager Boutté stated that she rejected Boyajian's application because she believed her to be younger than 18 years old, even though the application indicated that Boyajian was at least 30 years old; (2) Store Manager LaBonte referred Boyajian's application to Boutté, and would not have done so if Boyajian were younger than 18 years old; (3) a spreadsheet that reveals disparate hiring at the Exchange Street location from May 23, 2005 to July 30, 2006; and (4) the Collom testimony.

### i.    Boutté's explanations and LaBonte's referral

On her application to the Exchange Street location, Boyajian inadvertently circled "yes" in response to a question asking whether she was younger than 18 years old. Although Boutté does not specifically recall Boyajian's application, her practice as Store

Manager was to disregard any application on which the applicant answered "yes" to this question.

Boyajian attempts to generate a material dispute by noting that she wrote "20+ years in cafes, coffee shops, catering, bakeries + retail + restaurants" on the first page of her application. She also wrote that she had attended college. According to Boyajian, these statements undercut Boutté's proffered justification. Furthermore, Boyajian observes that after interviewing her at the Northgate job fair, Store Manager LaBonte referred her application to Boutté. Thus, Boutté should have known that Boyajian was at least 18 years old, as LaBonte would not have referred an ineligible applicant.

The Court agrees that Boyajian's application contained evidence sufficient to have permitted Boutté to infer that the applicant was in fact older than 18. Moreover, Boutté might have deduced from LaBonte's referral that Boyajian had completed the application incorrectly. However, Boyajian does not dispute that Boutté never read the application.[9] And even if she had, Boutté may or may not have read the application with LaBonte's referral in mind: LaBonte simply had left it on Boutté's desk. Thus, Boyajian's argument rests exclusively on "unsupported conclusions [and] optimistic surmise" and does not support an interference of discrimination. Kouvchinov, 537 F.3d at 66.

### ii.    Boutté hiring data

Boyajian identifies a spreadsheet produced by Starbucks in discovery, which shows that during the period of Boutté's management of the Exchange Street location,

---

[9] Boutté's practice was to disregard any application that indicated the applicant was younger than 18 years old. (See Def.'s SMF ¶ 17.) Boyajian purports to deny this fact, but the authority she cites does not support her denial. (See Def.'s SMF ¶ 17; Pl.'s OSMF ¶ 17.) Because this fact is supported by the record citation provided by Starbucks, it is deemed admitted.

she hired 24 baristas, only one of whom was older than 40 at the time of hiring. Starbucks fails to respond specifically to this evidence.

Again, although this evidence is subject to numerous explanations, it could support an inference of pretext. Therefore, the Court considers it in determining whether Boyajian has satisfied her burden.

### iii.    The Collom testimony

Finally, Boyajian offers Collom's findings regarding the Exchange Street location, which are particularly suspect: Collom acknowledges that he did not receive all of the relevant applications from this store. Nevertheless, he purportedly identified 34 total applicants during 2006 and 39 total application during 2007. During 2006, two of 14 baristas hired were older than 35, but Collom does not state how many of the 34 total applicants were older than 35. During 2007, five of 39 total applicants were older than 35. One was hired.[10] Collom thus concludes that "there is substantial evidence of age discrimination occurring at [the] three Starbucks stores," including Exchange Street. (Collom Report (Docket # 45-2) at 12.)

In addition to the troubling deficiencies already described, Collom's testimony regarding the Exchange Street location rests upon an admittedly incomplete data set and lacks sufficient comparative evidence regarding the total number of applicants older than 35. See LeBlanc, 6 F.3d at 848; Hawkins, 2001 U.S. Dist. LEXIS 9171, at *17. Therefore, although the Court considers it at this stage, Collom's testimony regarding the

---

[10] At a hiring rate of 38.5% (15 of 39 total applicants were hired during this period), the expected number of applicants older than 35 expected to be hired is 1.92 (38.5% times five such applicants). The actual number was 1.

Exchange Street location constitutes extremely "thin" evidence of pretext. <u>Booker</u>, 527 F. Supp. 2d at 226.

In sum, Boyajian has not demonstrated that Starbucks' proffered justification—her incorrect answer indicating that she was younger than 18 years old—is pretextual. Neither her inferential arguments nor her statistical evidence constitute sufficient evidence of discrimination. Thus, the Court GRANTS Defendant's Motion for Summary Judgment (Docket # 44) as to Boyajian's Exchange Street application.

### C.    Application to Maine Crossing Location

In support of its decision not to hire Boyajian at the Maine Crossing location, Starbucks offers the five-year gap in her work history as a legitimate nondiscriminatory justification. In response, Boyajian adduces the following evidence of pretext: (1) Store Manager Belew's inconsistent hiring decisions; (2) a spreadsheet that reveals disparate hiring at the Maine Crossing location from March 27, 2006 to March 18, 2007; and (3) the Collom testimony.

#### i.    Belew's inconsistent hiring decisions

Belew testified that he would have screened out Boyajian's applications because of a five-year gap in her work history. <u>See</u> <u>Hawkins</u>, 2001 U.S. Dist. LEXIS 9171, at *9 (describing "sporadic work history with large gaps in employment" as a legitimate nondiscriminatory justification). In response, Boyajian asserts that Belew's recent hiring of an applicant named Forbes undercuts this explanation: Forbes' application, according to Boyajian, "indicates no transferable skills." (Pl.'s Opp. to Def.'s Mot. for Summary Judgment (Docket # 49) at 11.)

Boyajian appears to confuse continuous employment with particular work experience. Thus, Belew's recent hiring of Ms. Forbes does not support an inference of discrimination.

### ii.    Belew hiring data

Boyajian identifies a spreadsheet produced by Starbucks in discovery, which shows that during the period of Belew's management of the Maine Crossing location, he hired 14 baristas, only one of whom was older than 32 at the time of hiring. Starbucks fails to respond specifically to this evidence.

Again, although this evidence is subject to numerous explanations, it could support an inference of pretext. Therefore, the Court considers it in determining whether Boyajian has satisfied her burden.

### iii.    The Collom testimony

Finally, Boyajian offers Collom's testimony regarding the Maine Crossing location. Collom concluded that during a one-month period, April 2006, two of 12 applicants were older than 35. None were hired.[11] Collom determined that these findings constitute "substantial evidence of age discrimination" at the Maine Crossing location. (Collom Report (Docket # 45-2) at 12.)

Much of the Court's preceding analysis regarding the Collom testimony's deficiencies pertains to the Maine Crossing evidence. Furthermore, this evidence rests upon an extremely limited data set. See Hawkins, 2001 U.S. Dist. LEXIS 9171, at *16 (observing that "[t]he usefulness of statistical evidence depends on all of the surrounding

---

[11] At a hiring rate of 16.7% (two of 12 total applicants were hired during this period), the number of applicants older than 35 expected to be hired is 0.33 (16.7% multiplied by two such applicants). Again, the actual number was 0.

facts and circumstances.  The completeness of the evidence is also a factor to be considered.") (citation and internal punctuation omitted).  Therefore, although the Court considers it, Collom's testimony regarding the Maine Crossing location has limited probative value.

Ultimately, in the absence of sufficient evidence to demonstrate that Starbucks' proffered justification is pretextual, the Court GRANTS Defendant's Motion for Summary Judgment (Docket # 44) as to Boyajian's Maine Crossing application.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion for Summary Judgment (Docket # 44) is hereby GRANTED IN PART and DENIED IN PART.  In short, Plaintiff survives summary judgment only to the extent she alleges discrimination in connection with her Hay Building application.  Because the Court finds the admissibility of Collom's testimony does not affect this ruling, the Court RESERVES RULING on Defendant's Motion to Preclude Testimony and Reports of Plaintiff's Expert Witness (Docket # 45).

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 24th day of November, 2008.